**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| Lishui Mpin Toys Co., Ltd.<br><br>        Plaintiff,<br>vs.<br><br>Sentk LLC,<br>J & Y Stucco LLC,<br>Heyblack International Trade Inc.,<br>Shenzhen Yongsheng Technology Co., Ltd., and<br>Qin Lu.<br><br>        Defendants. | Case No. 1:26-cv-945<br><br><br>**District Judge**:<br>Honorable Matthew F. Kennelly<br><br><br>**Magistrate Judge**:<br>Honorable Albert Berry, III |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY
OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff, Lishui Mpin Toys Co., Ltd. ("Mpin" or "Plaintiff"), submits this Memorandum

in support of Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a

temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

i

**Table of Contents**

I.     **INTRODUCTION AND SUMMARY OF FACTS**................................................1

II.    **STATEMENTS OF FACTS**.................................................................................3

    A.  Plaintiff's Copyrighted Works and Products .....................................................3

    B.  Defendants' Unlawful Activities .......................................................................4

III.   **ARGUMENT**......................................................................................................5

    A.  This Court May Exercise Personal Jurisdiction Over Defendants......................7

    B.  Standard for Temporary Restraining Order and Preliminary Injunction ............8

    C.  Plaintiff is very likely to succeed on the merits ................................................9

    D.  Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief...............10

    E.  Balance of equities tips in Plaintiff's favor.....................................................11

    F.  Issuance of the Injunction is in the Public Interest .........................................12

IV.   **THE EQUITABLE RELIEF OF ASSET RESTRAINT AND EXPEDITED DISCOVERY IS APPROPRIATE**...................................................................13

    A.  Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Work is Appropriate .......................................13

    B.  Preventing the Fraudulent Transfer of Assets is Appropriate...........................14

    C.  Plaintiff is Entitled to Expedited Discovery ...................................................15

V.    **THE BOND FOR THE TRO SHOULD BE SET AT US$3,000**..................17

VI.   **CONCLUSION.** ................................................................................................18

**Table of Authorities**

| Authorities | Page |
|---|---|
| *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) | 14 |
| *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) | 14 |
| *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) | 16 |
| *Animale Group Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) | 14, 15 |
| *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3rd Cir. 1983) | 12 |
| *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) | 15 |
| *DM Trans, LLC v. Scott*, 38 F.4th 608 (7th Cir. 2022) | 10 |
| *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) | 9 |
| *In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) | 2 |
| *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910 (7th Cir. 2007) | 9 |
| *Levi Strauss & Co. v. Sunrise International Trading Inc.*, 51 F.3d 982 (11th Cir. 1995) | 14, 15 |
| *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531 (7th Cir. 2021) | 10 |
| *Planned Parenthood of Indiana, Inc. v. Commissioner of the Indiana State Department of Health*, 699 F.3d 962 (7th Cir. 2012) | 10 |
| *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003) | 8 |
| *Reebok International Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir. 1992) | 14, 15 |
| *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914 (7th Cir. 1950) | 12 |
| *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) | 8, 9, 11 |

iii

*uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010) — 8

*Anna Melis v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-03989 (N.D. Ill. May 23, 2025) — 2, 13, 15

*Antsy Labs, LLC v. Individuals Corps., Limited Liability Companies, Partnerships, & Unincorporated Association Identified on Schedule A Hereto*, 2022 WL 17176498 (N.D. Ill. Nov. 23, 2022) — 10

*Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) — 11

*Charter National Bank & Trust v. Charter One Financial, Inc.*, No. 1:01-cv-00905, 2001 WL 527404 (N.D. Ill. May 15, 2001) — 8

*Columbia Pictures Industries, Inc. v. Jasso*, 927 F. Supp. 1075 (N.D. Ill. 1996) — 6

*Karin Louise Taylor v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-03597 (N.D. Ill. May 8, 2025) — 13, 15

*Krause International Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D.D.C. 1994) — 11

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005) — 14, 15

*Mob Entertainment, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 1:25-cv-3881 (N.D. Ill. May 2, 2025) — 17

*Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897 (N.D. Ill. 2015) — 17

*Ouyeinc Ltd. v. Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, 2021 WL 2633317 (N.D. Ill. June 22, 2021) — 7

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007) — 16

*Warner Bros. Entertainment, Inc. v. WTV Systems*, 824 F. Supp. 2d 1003 (C.D. Cal. 2011) — 11

17 U.S.C. § 101 — 9

17 U.S.C. § 101, et seq. — 6

| | |
|---|---|
| 17 U.S.C. § 104(b) | 3 |
| 17 U.S.C. § 501 | 9 |
| 17 U.S.C. § 504(b) | 2, 3, 14 |
| 28 U.S.C. § 1331 | 6 |
| 28 U.S.C. §§ 1338(a)-(b) | 6 |
| 28 U.S.C. § 1391 | 6 |
| 735 ILCS 5/2-209(a)(2) | 7 |
| Fed. R. Civ. P. 4(k)(2) | 8 |
| Fed. R. Civ. P. 65(b) | 6, 13 |
| Fed. R. Civ. P. 65(c) | 17 |
| Fed. R. Civ. P. 65(d)(2)(C) | 3, 13, 16 |

<u>**MEMORANDUM OF LAW**</u>

## I. INTRODUCTION AND SUMMARY OF FACTS

Plaintiff brings this action against Defendants for copyright infringement (Count I) and for declaration of invalidity of certain copyright registrations owned by Defendants (Count II). As alleged in the Complaint, Defendants are selling unauthorized building block toys ("Infringing Products") that are direct copies or derivative works of Plaintiff's Copyrighted Works (including U.S.-registered works and foreign works protected under the Berne Convention) and that are exact copies of authentic building block toys produced by Plaintiff, hereinafter referred to as the "Mpin Products". Defendants operate Internet Stores on the TikTok Shop platform under the shared "WinkToys" brand, through which they advertise, offer for sale, sell, distribute, and ship Infringing Products to consumers in the United States and Illinois. Defendants have also obtained Fraudulent Copyright Registrations by falsely claiming authorship and originality over derivatives of Plaintiff's Copyrighted Works and misused those registrations to file bad-faith DMCA takedown notices against Plaintiff's authorized resellers.

This Court has personal jurisdiction over Defendants because they target Illinois residents by operating interactive commercial Internet Stores on TikTok Shop through which Illinois consumers can and do purchase Infringing Products and watching infringing TikTok short videos featuring Infringing Products. Testing orders placed on each Defendant Internet Store were fulfilled and shipped to this District.

Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order: (1) temporarily enjoining Defendants' continued manufacturing, reproduction, distribution,

offering for sale, sale, importation, and public display of Infringing Products embodying the Copyrighted Works; (2) temporarily restraining Defendants' assets (including those held by payment processors, financial institutions, and TikTok Shop platforms in active concert or participation) to preserve Plaintiff's right to an equitable accounting of profits under 17 U.S.C. § 504(b); and (3) authorizing expedited discovery to obtain records related to the manufacture, distribution, sale, and financial accounts concerning the Infringing Products.

Courts in this District regularly grant such relief in similar copyright cases involving covert online infringement. *See, e.g., Anna Melis v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-03989 (N.D. Ill. May 23, 2025); *see also In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence attached to the Complaint and submitted through declarations to this *Ex Parte* Motion establish that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff will demonstrate a strong likelihood of success on the merits. Plaintiff is the exclusive licensee of valid copyright registrations owned by Plaintiff's cofounders. Defendants have sold and continue to offer Infringing Products on a massive scale.

In addition, Defendants have and continue to irreparably harm Plaintiff through diminished goodwill and damage to Plaintiff's reputation. Monetary damages are inadequate to Plaintiff for these damages. This makes injunctive relief particularly appropriate in this matter.

Issuance of an injunction is also in the public interest because it will prevent unknowing

consumers from being deceived into purchasing pirated Mpin Products.

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as TikTok Shop platform and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 17 U.S.C. § 504(b).

## II.    STATEMENTS OF FACTS

### A.  Plaintiff's Copyrighted Works and Products

Plaintiff is the exclusive licensee (with enforcement rights) of the Copyrighted Works, including U.S.-registered 2-D artworks (e.g., VA 2-470-124 (MPIN MOLI), et al.) and Foreign Copyrighted Works (sculptural and derivative works featuring bears and figures, first published in China and protected under 17 U.S.C. § 104(b) via the Berne Convention). [1-3]. True and correct copies of the registration certificates for the U.S.-registered 2-D artworks are attached as Exhibit 1 to the Complaint. [1-1].  A list of forty-five Foreign Copyrighted Works which Defendants infringed is attached as Exhibit 2 to the Complaint with translated information and copies of registration certificates issued by the official China Copyright Bureau. [1-2]. The registration dates for Foreign Copyrighted Works spans from 2022 to 2025. *Id*.

The Copyrighted Works were all authored and owned by Plaintiff's two cofounders and form the basis for Plaintiff's high-quality Mpin Products. *See* Joint Declaration of Yan He and Jiuzhou Liu at ¶ 1 (hereinafter He/Liu Decl.).  Plaintiff has invested substantial time, money, and other resources in developing, advertising, and promoting the Copyrighted Works and Mpin

3

Products, achieving significant goodwill and market recognition. *Id* at ¶ 5.  Thus, the Copyrighted Work is widely recognized and exclusively associated by consumers, the public, and the trade as being associated with Plaintiff.

### B.  Defendants' Unlawful Activities

On information and belief, Defendants, Sentk LLC (Defendant No. 1), J & Y Stucco LLC (Defendant No. 2), and Heyblack International Trade Inc. (Defendant No. 3), operate TikTok Shop Internet Stores under the WinkToys brand, i.e. @winktoys.shop, @winktoys_official and @winktoys.bear respectively, selling Infringing Products that copy or derive from the Copyrighted Works on a massive scale. As demonstrated in Exhibit 5 to the Complaint, each Defendant Internet Store has a massive listing of Infringing Products that are exact copies of Mpin Products and infringes each Copyrighted Work. [1-5]. Defendant Internet Stores also posted videos containing the Infringing Products. *Id*.

The Infringing Products were sourced/manufactured by Defendant Shenzhen Yongsheng Technology Co., Ltd. ("Defendant No. 4") and shipped from shared facilities. He/Liu Decl. at ¶ 7. Defendant Qin Lu ("Defendant No. 5") is the majority shareholder and executive director of Shenzhen Yongsheng. *Id.* at ¶ 10. Defendant No. 4 and Defendant No. 5 falsely obtained Fraudulent Copyright Registrations and misused them for bad-faith DMCA takedowns against legitimate resellers of Plaintiff who were selling the Mpin Products that are protected by Copyrighted Works. *See* [1-6] and [1-7]; *Also see* He/Liu Decl. at ¶ 9.

The WinkToys trademark is owned by TMMGO NUTRITION INC in the United States whose executive director, Haojie Chen, is a minority shareholder and senior officer of Defendant No. 4.  He/Liu Decl. at ¶ 10. Therefore, upon information and believe, Defendants are all under

4

common control, related or associated and are acting in concerted manner. The entities names of Defendants No. 1 to 3 are displayed on the Internet Stores, but detailed corporate registration information is concealed or not provided to the public. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

Further, infringers such as Internet Stores managed or controlled by overseas entities/individuals typically operate multiple accounts behind layers of payment gateways so that they can continue operation. Upon information and belief, Defendants maintain offshore bank accounts and regularly move funds from their accounts to offshore bank accounts outside the jurisdiction of this Court.

Plaintiff's well-pleaded allegations regarding the shared trade name/brand among Defendants' Internet Stores, the same infringing products produced by the same manufacturer, the same layouts and images used in Defendants Internet Stores, and common control between supplier and Internet Stores establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of infringers. Defendants are working in active concert to knowingly and willfully infringe Copyrighted Works and Mpin Products in the same transaction, occurrence, or series of transactions or occurrences.

## III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Copyrighted Works. To stop Defendants' sale of Infringing Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, to provide notice of these

5

proceedings and the freeze of Defendants' assets by publishing the information on a designated website as well as sending emails to the email addresses Defendants used to register and maintain their sellers accounts on TikTok. Without the relief requested by Plaintiff's instant *Ex Parte* Motion, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods infringing the Copyrighted Work via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Copyrighted Works and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, redirect traffic to other websites and/or marketplace accounts in their control, and move any assets from U.S.-based accounts, including PayPal, Stripe or similar accounts. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso,* 927 F. Supp. 1075, 1077 (N.D. III. 1996).

As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order. This Court has original subject matter jurisdiction over the claims in

this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. $8 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### A.   This Court May Exercise Personal Jurisdiction Over Defendants

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, by directly offering for sale products into this judicial district as well as through at least the fully interactive, commercial Defendant Internet Stores on TikTok Shop platform. Specifically, Defendants are reaching out to do business with Illinois residents by operating interactive Defendant Internet Stores through which Illinois residents can watch short videos featuring Infringing Products and purchase Infringing Products.

Illinois courts regularly exercise personal jurisdiction over websites using intellectual property without authorization in connection with the offering for sale and selling of infringing merchandise to Illinois residents over the internet. 735 ILCS 5/2-209(a)(2). In addition, Courts in this District generally find jurisdiction when a defendant ships even a single product to an Illinois address. See *Ouyeinc Ltd.*, 2021 WL 2633317, at *4 (finding that the "shipment of a single product to an Illinois address" was sufficient to establish purposeful availment).

Here, orders for the Infringing Product were placed from each Defendant Internet Store, all of which were fulfilled with successful shipments to this District. He/Liu Decl. at ¶ 7. Shipment tracking showing the arrival location in this District is attached as Exhibit 2 to He/Liu Decl.  This documented sale and direct shipment of the Infringing Product into Illinois is sufficient to establish a prima facie case for personal jurisdiction. In addition, there are thousands of sales records shown

7

on the listing webpages of Infringing Products on the Internet Stores. [1-5] Expedited discovery is more than likely to unearth more sales to this District.

In addition, for Defendant No. 4 and Defendant No. 5 who registered Fraudulent Copyright Registrations with the United States Copyright Office and filed false DMCA against Plaintiff's authorized resellers who sold Mpin Products which are protected under Copyrighted Works, personal jurisdiction by this District is also proper under Federal Rule of Civil Procedure 4(k)(2) because the claims arise under federal law, and Defendant No.4 and No. 5's purposeful contacts with the United States as a whole satisfy the requirements of due process. [1-6] and [1-7].

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423 (7th Cir. 2010); *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) "When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Based on the documented purchase orders and shipment to this District, Plaintiff has established a *prima facie* case for personal jurisdiction.

**B. Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit have held that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must

demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. Id. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" - the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Ty, Inc.*, 237 F.3d at 895. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id*. at 895-96. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

### C. Plaintiff is very likely to succeed on the merits

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. V. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Article 101

9

of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization ..., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Here, Plaintiff is the exclusive licensee related to the registered copyrights for Copyrighted Works. [1-3]. The Infringing Products use the exact same artworks protected under the Copyrighted Works in a large scale, i.e. infringing five U.S. copyright registrations and 45 foreign copyrights protected in the U.S. A comparison chart of infringement is attached as an Exhibit 1 to He/Liu Decl. As such, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of this claim.

**D. Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief**

"Harm is irreparable if legal remedies available to the movant are inadequate, meaning they are seriously deficient as compared to the harm suffered." *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022) (citation omitted). The stronger the case on the merits, the less irreparable harm must be shown. *Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir.1997); *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012) (noting "the strength of the moving party's likelihood of success on the merits affects the balance of harms"). It is generally true that harm stemming from lost customers is not irreparable if the lost customers can be identified. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545-46 (7th Cir. 2021).

In this case, Plaintiff has invested lots of resources into creating, designing, producing, marketing and selling the Mpin Products, including but not limited to spending tremendous amount of money, around $790,000, yearly in marketing and promoting the Mpin Products. He/Liu Decl.

at ¶ 5. The Infringing Products are exact copies of Plaintiff's Copyrighted Works. The Infringing Products are priced similarly to the Mpin Products and targets the same group of consumers, thus forming a direct competing business. He/Liu Decl. at ¶ 6. The existence of Infringing Products is very likely to cut into Plaintiff's customer base and impacting the brand reputation.

Therefore, considering Plaintiff's likelihood of winning the case on the merits, Plaintiff will suffer irreparable harm where there is potential great harm to reputation, brand confidence, and potential lost market share. *See Antsy Labs, LLC v. Individuals Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Ass'n Identified on Schedule A Hereto*, 2022 WL 17176498, at *3 (N.D. Ill. Nov. 23, 2022).

### E. Balance of equities tips in Plaintiff's favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright context, since Defendants "cannot complain" of being forced to

cease their infringement. *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### F.  Issuance of the Injunction is in the Public Interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). This is especially true here since protecting the creative content of the Copyrighted Works extends far beyond protecting the works of creative artists. It also protects the integrity and reputation of Mpin Products and encourages creative expression.

Moreover, federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). This is equally true in the copyright context. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of copyrights used in connection with those goods. Unless Defendants' unauthorized use of the Copyrighted Works is enjoined, the public will

12

continue to be confused and misled by Defendants' conduct.

For the above reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV. THE EQUITABLE RELIEF OF ASSET RESTRAINT AND EXPEDITED DISCOVERY IS APPROPRIATE

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as ecommerce platforms and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. The facts in this case warrant such relief.

### A. Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Work is Appropriate

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the Copyrighted Works on or in connection with all Defendant Internet Stores and to cease their acts of copyright infringement. Such relief is necessary to stop the ongoing harm to the Copyrighted Works, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Copyrighted Works. The need for *ex parte* relief is magnified in today's global economy where infringers can operate over the internet in an anonymous or remote fashion.

Many courts have authorized immediate injunctive relief in similar cases involving the

unauthorized use of intellectual property. *See, e.g., Karin Louise Taylor v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-Cv-03597 (N.D. Ill. May 8, 2025); *Anna Melis v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-03989 (N.D. Ill. May 23, 2025).

### B. Preventing the Fraudulent Transfer of Assets is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets to ensure Plaintiff's right to an equitable accounting of Defendants' profits pursuant to 17 U.S.C. § 504(b). Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants, whose management team are based outside of the United States, may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets overseas, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in an IP infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits

14

seeking equitable relief. *Id*. (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940))). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id*.; *see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question... were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."). Also, this Court issued asset restraining orders in similar cases involving copyright or other IP infringement. *See, e.g., Karin Louise Taylor v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-03597 (N.D. Ill. May 8, 2025); *Anna Melis v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-03989 (N.D. Ill. May 23, 2025).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities. Unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts as the Internet Stores are managed and operated by foreign entities/individuals. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C. Plaintiff is Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits."

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id*. (citation omitted).

As described above, Defendants are using third-party payment processors such as Stripe or PayPal, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover banking, financial and payment system accounts Defendants use for their infringing sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiff's counsel is aware that the third parties are cooperative in previous lawsuits to work with copyright owners and comply with these expedited discovery requests without undue burden. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

16

**V.      THE BOND FOR THE TRO SHOULD BE SET AT US$3,000**

Federal Rule of Civil Procedure 65(c) requires that an applicant for a TRO or preliminary injunction provide security against the potential effects of a wrongfully issued injunction. Fed. R. Civ. P. 65(c). "The appropriate amount of the bond is subject to the court's discretion." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015).

Plaintiff respectfully submits that consistent with this Court's practice of imposing a $1,000.00 bond with respect to each overseas-run Internet Store in various copyright Infringement cases. *See, e.g.*, Bond, ECF No. 32 in *Mob Entertainment, Inc. v. The P'ships & Unincorporated Assns. Identified on Schedule A*, Case No. 1:25-cv-3881 (N.D.III. May 2, 2025)($55,000.00 bond for 55 Stores).

Because Defendants No. 4 and No. 5 are mainly involved in Count II related to declaratory of invalidity of certain US copyright registrations which are related to the Copyrighted Works but will not be directly impacted by any TRO, Defendants No. 4 and No. 5 should not be counted towards the number of Internet Stores for purposes of determining bond.

Further, because of the strong and unequivocal nature of Plaintiff's evidence of infringement and almost all of the products sold on Defendants' Internet Stores are infringing Plaintiff's Copyrighted Works (fifty copyrights in total), Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Three Thousand U.S. Dollars ($3,000), equivalent to $1,000 for each Internet Store (Winktoys Blocks Wonderland, Winktoys Blocks World, and Winktoys building block). *See, e.g., Monster Energy Co.*, 136 F. Supp. 3d at 910-11.

17

## VI.   CONCLUSION.

In view of the foregoing and consistent with previous similar cases, Plaintiff requests that the Court enter a Temporary Restraining Order.

Dated: January 29, 2026.                           Respectfully submitted,

                                                    */s/ D. Vincent Yu*

                                                    D. Vincent Yu
                                                    NY Bar No. 4895058
                                                    Admitted to N.D. Ill.
                                                    EBIZ LAW LLC
                                                    1178 Broadway, 3rd Floor #3142
                                                    New York, NY 10001
                                                    (212)960-3558
                                                    vincent.yu@ebiz.law