**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LISHUI MPIN TOYS CO., LTD.**, Plaintiff, *~ versus ~* **SENTK LLC***;* **J & Y STUCCO LLC***;* **HEYBLACK INTERNATIONAL TRADE INC.***;* **SHENZHEN YONGSHENG TECHNOLOGY CO., LTD.***; and* **QIN LU**, Defendants. | Case No. 1:26-cv-945 **District Judge**: The Honorable Matthew F. Kennelly **Magistrate Judge**: The Honorable Albert Berry, III |

**MEMORANDUM OF LAW BY PLAINTIFF**
**IN REPLY TO DEFENDANTS' OPPOSITION (ECF 81)**
**TO THE MOTION TO COMPEL DISCOVERY**
**(ECF NO. 72)**

By: Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Plaintiff*
*Lishui Mpin Toys Co., Ltd.*

## TABLE OF CONTENTS


A. Table of Contents

B. Table of Authorities ....................................................................................................3

C. Introductory Statement ..............................................................................................4

D. Argument ...................................................................................................................5

1. Defendants' Four "Threshold Errors" (ECF 81, Part III). ......................................5

a. The August batch contains none of the categories at issue. ...................5

b. Plaintiff's spoliation motions do not contradict this motion. .................6

d. The July 6 Additional Requests were not the origin of these categories. ...........................................................7

2. The Categories Defendants Say Have Been Answered (ECF 81, Part IV). ............8

a. Marketing and advertising. ...................................................................8

b. Financial and sales records. ..................................................................9

c. Sourcing, manufacturing, and the payment path. ...............................10

d. Warehousing, storage, and fulfillment. ...............................................11

e. Takedown submissions. .......................................................................11

f. Privilege log and PRC-law objections. ...............................................12

3. Narrow Verified Supplemental Responses Are Warranted on This Record. .........12

4. Expenses Are Warranted Under Rule 37(a)(5) (ECF 81, Part V). .........................14

E. Conclusion ...............................................................................................................15

Certificate of Service .....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Board of Education of Evanston Township High School District No. 202 v. Admiral Heating & Ventilating, Inc.*,
104 F.R.D. 23 (N.D. Ill. 1984) ........ 15

*Chaveriat v. Williams Pipe Line Co.*,
11 F.3d 1420 (7th Cir. 1993) ........ 10

*Commodity Futures Trading Commission v. Collins*,
997 F.2d 1230 (7th Cir. 1993) ........ 9

*Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.*,
222 F.R.D. 594 (E.D. Wis. 2004) ........ 12

*Hobley v. Burge*,
433 F.3d 946 (7th Cir. 2006) ........ 10

*LKQ Corp. v. Kia Motors America, Inc.*,
345 F.R.D. 152 (N.D. Ill. 2023) ........ 12, 13, 14

*Mendez v. City of Chicago*,
No. 1:18-cv-06313 (N.D. Ill. Mar. 9, 2021) ........ 5

*Muro v. Target Corp.*,
250 F.R.D. 350 (N.D. Ill. 2007) ........ 12

*Pable v. Chicago Transit Authority*,
145 F.4th 712 (7th Cir. 2025) ........ 14

*Pierce v. Underwood*,
487 U.S. 552 (1988) ........ 14

*Ritacca v. Abbott Laboratories*,
203 F.R.D. 332 (N.D. Ill. 2001) ........ 12

**Rules**

Fed. R. Civ. P. 26(b)(5)(A) ........ 12

Fed. R. Civ. P. 34 ........ 12, 14

Fed. R. Civ. P. 37(a)(5) ........ 14

Fed. R. Civ. P. 37(a)(5)(A) ........ 4, 7, 14

Fed. R. Civ. P. 37(a)(5)(C) ........ 15

Fed. R. Civ. P. 45 ........ 10

N.D. Ill. Local Rule 37.2 ........ 7, 14

**C. Introductory Statement**

Fact discovery closed on August 14, 2026.

As discovery closed, Defendants set the Plaintiff roughly 2,700 pages. This material was sent long after they could be challenged or explored at any of the depositions. The materials that were produced are not responsive: they contain no purchase orders, no invoices, no supplier agreements, no shipping or warehousing records, and no marketing or advertising material. The papers appear to be a random collection of inadmissible prior-art materials. It is unexplained, but perhaps the Defendants intend to seek the admission of that evidence as to the invalidity counterclaim. But that would require direct testimony, foundation and authentication. It would also require that the Plaintiff to depose the witness who will be used to offer it into evidence, an opportunity that does not exist since it was produced after the close of discovery.

On August 25, 2026, eleven days *after* discovery closed, and in parallel with the opposition to the motion, the Defendants sent materials that appear to be responsive to the requests for documents about marketing. Again, none of this is admissible, it was produced after the close of the extended discovery schedule, and there has been no opportunity to challenge the authenticity, understand the meaning or otherwise depose the custodian of those records.

Despite all that, most o0f what Plaintiff identified on July 6, 2026 remains absent.

This missing material includes key evidence such as transaction-level financial records and the payment path upstream of the storefronts; a production index, a privilege log, and other requested materials. Further, even if the Defendants did ultimately comply (they haven't), expenses under Rule 37(a)(5)(A) apply when "the disclosure or requested discovery is provided after the motion was filed."

**D. Argument**

**1. Defendants' Four "Threshold Errors" (ECF 81, Part III).**

**a. The August batch contains none of the categories at issue.**

Defendants say Plaintiff's account of the production is inaccurate. ECF 81 at 3. The chronology is not in dispute and is easily stated. Defendants produced DEF000001–000266 from May 22 through May 28, 2026; DEF000267–000386 on June 18, 2026; supplemental interrogatory responses, without further production, on June 26, 2026; DEF000387–000399 on July 20, 2026, the day this motion was filed; DEF000400–000439 with the verified responses on August 6, 2026; approximately 2,664 pages running from DEF000400 through DEF003123 on or about August 14, 2026, the closing day of fact discovery and four days after the deposition of Ms. Zheng Xi, the last examination in this case; and DEF003124–003129 on August 25, 2026, eleven days after discovery closed. That is the chronology Plaintiff gave in its opening memorandum. ECF 72 at 3–4.

The Opposition states that these productions were made "still during the fact discovery period." ECF 81 at 1. That is not so as to the August 25 set. And as to the August 14 batch, material served on the closing day of discovery cannot be used in discovery at all. Plaintiff examined every one of Defendants' witnesses without it. That timing caused concrete prejudice. When documents are produced after a witness has been deposed, the available remedies ordinarily require either extending discovery or reopening the deposition, with resulting delay and expense. *Mendez v. City of Chicago*, No. 1:18-cv-06313 (N.D. Ill. Mar 9, 2021).

Further, the contents matter more than some artificial page count.

Of the 2,664 pages served on August 14, approximately 1,900 consist of Japanese and Chinese collector-blog posts and product pages concerning Be@rbrick figures; roughly 300

are Wayback Machine captures of websites from 2004 through 2008; a further set comprises Chinese, European, British, and United States design registrations, including United States Design Patent D472,283 to the designer of the Be@rbrick figure; and twenty-five pages, DEF001400–001424, are Chinese-language social-media articles about Plaintiff's counsel, the same material Defendants attach to the Wang Declaration at ECF 80-1. Fifty-four pages at DEF002990–003043 are TikTok Shop IPPC takedown records. The batch contains:

no purchase orders;

no invoices;

no supplier or manufacturing agreements;

no shipping, logistics, or warehousing records; and

no marketing, advertising or influencer-related materials.

Those are the categories this motion seeks. A production is measured by what it contains, not by how much of it there is, and the entirely irrelevant and inadmissible prior-art collection assembled for Defendants' invalidity counterclaim answers nothing Plaintiff asked for.

**b. Plaintiff's spoliation motions do not contradict this motion.**

Defendants argue that Plaintiff cannot simultaneously contend that evidence was destroyed and that evidence is being withheld. ECF 81 at 4. The two motions address different custodians and different repositories, and Defendants' own brief supplies the distinction. The spoliation motions concern locally stored WeChat communications on the personal smartphones of Mr. Zhang and Ms. Lu.

This motion concerns platform-maintained and corporate records including Seller Center exports, settlement and payout data, supplier documents and payment records. Defendants claim these "remained available" even after the phones were destroyed. ECF 79 at 8.

Defendants also quote Plaintiff's spoliation briefs for the proposition that these businesses signed no written contracts and kept no ledgers. ECF 81 at 4. Taking the Defendants' implausible claim seriously on this point, that says nothing about the platform-generated records this motion seeks, which Defendants concede exist and have produced in part. A party may lose one category of evidence and withhold another. Indeed, that is what the record shows.

**d. The July 6 Additional Requests were not the origin of these categories.**

Defendants argue that the motion was premature because responses to the July 6, 2026 Additional Requests were not yet due when Plaintiff moved. ECF 81 at 4–5. The argument mistakes the request number for the dispute. Every category at issue was first sought in Plaintiff's April 27, 2026 initial discovery, catalogued in Plaintiff's May 25, 2026 deficiency letter, discussed at the parties' May 26, 2026 conference, and conferred upon again by video on July 9, 2026 under Local Rule 37.2. The July 6 service did two distinct things. Part II of that service identified, request by request, which of the April 27 deficiencies remained uncured after Defendants' June 26, 2026 supplements; the Additional Requests that followed restated those same categories with greater particularity after the June depositions. ECF 72, Exs. B & C. This motion is directed at the former. The July 6 requests did not create these categories, and Plaintiff does not seek to compel responses to them.

In any event, Rule 37(a)(5)(A) reaches discovery "provided after the motion was filed," subject to the three exceptions the Rule states. Defendants' own position is that the August production answers this motion. That concedes the categories were live and unproduced when the motion was filed on July 20. Plaintiff's fee request is confined accordingly: it reaches material responsive to the April 27 requests that Plaintiff identified as uncured on July 6, and not the July 6 Additional Requests whose response period had not run.

**2. The Categories Defendants Say Have Been Answered (ECF 81, Part IV).**

**a. Marketing and advertising.**

Defendants state that apart from the listing images and "advertising cost detail at DEF003112–3117," the Storefront Defendants "have no further marketing or advertising materials." ECF 81 at 5; Zhang Decl. ¶ 8, ECF No. 81-1. Two corrections. First, the Opposition describes the August production as running "DEF000400 through DEF003099," ECF 81 at 1, and then cites advertising cost detail at DEF003112–3117 — Bates numbers outside the range it has just defined. DEF003112 through DEF003123 are in fact the continuation pages of DEF003111, a Chinese court decision produced in the August 14 batch; they are not advertising records. Second, the advertising cost detail is DEF003124–003129, six native campaign-spend exports served on August 25, 2026 — after the close of fact discovery and on the day the Opposition describing them was filed. The Opposition's subtly confirms this, as it writes that they "are also producing" (the gerund to indicate that it hasn't been complete yet) further materials. ECF 81 at 2, 5.

Plaintiff does not press for materials that do not exist. It asks only that if material does not exist, the Defendants confirm that in writing. The need for this arises apparent from the supporting declaration itself. Mr. Zhang states that he "searched the TikTok Shop seller interface for the removed listings and for historical versions of them," Zhang Decl. ¶ 7, and then concludes, "after the search described above," that the Storefront Defendants have no other marketing or advertising materials in their possession, custody, or control, *id.* ¶ 8. A search of the seller interface for removed listings does not reach advertising or campaign accounts, affiliate and influencer records, or the platform messaging and WeChat channels on which Defendants

say this business was conducted. ECF 81 at 7. If the search was complete and comprehensive, they should say so in writing.

**b. Financial and sales records.**

The native Seller Center exports at DEF000400–419 are a substantial production and Plaintiff says so. They do not, however, answer the request. Yongsheng has sworn that it "does not maintain, and did not keep in the ordinary course of business, financial records that separately track gross revenue or net income of the Accused Products, and is therefore unable to state precise figures." ECF 81 at 6. That answer is the reason the remaining records matter: where a party's verified position is that no segregated record exists, the platform settlement and payout reports are the only independent measure against which the storefronts' figures can be tested.

The Plaintiff is not seeking these materials as "tax materials", and *Commodity Futures Trading Commission v. Collins*, 997 F.2d 1230, 1232–33 (7th Cir. 1993), does not speak to them; *Collins* cautions against compelling income-tax returns on a bare showing of relevance, and it creates neither a privilege nor a categorical bar. As to the Forms 1099-K, Plaintiff sought them in its May 25, 2026 deficiency letter and again on July 6, 2026, and asks only for the forms the platform issued to these three accounts, as an independent check on the financials, that the Defendants say cannot be identified. Plaintiff can use the Forms 1099-K generated by the platforms, if any, for the accused storefront accounts for the period at issue to begin that investigation. All of this can be done subject to the Confidentiality Order entered May 20, 2026.

And based on the testimony at the various depositions, these Forms may be the *only* way to begin to reconstruct where the funds went!

**c. Sourcing, manufacturing, and the payment path.**

Defendants invoke *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426–27 (7th Cir. 1993), to resist the payment-processor records. ECF 81 at 6. *Chaveriat* concerns documents held by a third party that a litigant has no legal right to obtain, and the line it draws is between the practical ability to ask for a document and the legal right to require it. These Defendants have the latter as to their own accounts. Defendants exported the native Seller Center data at DEF000400–419 from the seller interface, which is account data they hold by right as the account holders. Plaintiff's request is confined to reports Defendants can obtain by right through their own storefront and payment accounts. The Plaintiff does not seek the processor's internal files. Defendants' answer that the route to such records is a Rule 45 subpoena, ECF 81 at 6 (*citing Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006)), does not address a request so confined.

As to the funds after they left the storefronts, the difficulty is of Defendants' making. Ms. Zheng Xi testified that the money reached "the U.S. account" and then went "[t]o pay for the products purchased through a third party," whom she could not name, locate, or contact, and whose identity she said only Mr. Zhang would know. Tr. 61:20–62:20. Mr. Zhang testified that he does not know either. Where a party's own witnesses disclaim knowledge of the disposition of more than one million dollars in platform settlements, the appropriate relief is production of the existing records sufficient to identify the payment path. This should be accompanied with a verified supplemental writing that confirms what records are available, or that none exist.

**d. Warehousing, storage, and fulfillment.**

Defendants answer this category by pointing to the numbering of RFP No. 5 and to the inventory export at DEF000267. ECF 81 at 8. The export is a 107-row snapshot of fulfillment-center inventory. It is not the fulfillment, storage, or third-party logistics records the category seeks. Mr. Zhang testified that the storefronts used an "official warehouse" in the United States rented through a third party whose identity he could not confirm. Zhang Tr. 126:6–127:11. Because Defendants state that fulfillment is performed through the platform's own centers, ECF 81 at 8, the verified supplement described in Part 3 should state whether fulfillment, storage, or logistics records can be exported from those same accounts. Plaintiff asks that this category be answered in that manner rather than by a numbering objection.

**e. Takedown submissions.**

Defendants state that the takedown materials "are produced" at DEF000028–032, DEF000388–399, and DEF002990–003043. ECF 81 at 8. Those materials total fifty-four pages of IPPC portal screenshots plus seventeen pages produced earlier, and the DEF002990–003043 range was itself captured on August 7, 2026 and withheld until August 14. What has not been produced is the underlying complaint file: the native submissions, the image exhibits transmitted with them, the platform correspondence, and any appeals, retractions, or outcome records. Ms. Lu could not identify the service provider that prepared the forty-one registrations on which the takedowns rest, and testified that the deposit copies are "not locatable." Lu Tr. 118:15–24; 124:6–9. Count II turns on the content of those submissions, and Plaintiff itemized this same gap as uncured on July 6, 2026. ECF 72, Ex. C, Part II.

**f. Privilege log and PRC-law objections.**

Defendants now state that "no responsive material is being withheld on privilege or PRC-law grounds," and that "where nothing is withheld, there is nothing to log." ECF 81 at 8. Plaintiff accepts that representation and withdraws its request for a waiver finding on the present record. Plaintiff asks only that the representation be memorialized, because Defendants' written responses asserted attorney-client privilege, work product, common interest, and settlement privilege, and their General Objections promised a withheld-document list that never issued. Plaintiff requests an order memorializing Defendants' representation that no responsive document is presently withheld on any privilege, immunity, or foreign-law ground, and requiring prompt compliance with Rule 26(b)(5)(A) should any responsive material later be withheld. Fed. R. Civ. P. 26(b)(5)(A). Plaintiff does not ask the Court to declare a prospective waiver, so the waiver authorities Defendants marshal are not in issue. ECF 81 at 8 (*citing Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335–36 (N.D. Ill. 2001), and *Muro v. Target Corp.*, 250 F.R.D. 350 (N.D. Ill. 2007)). The order Plaintiff seeks costs Defendants nothing if the representation is accurate, and it leaves the Court free to address any particular late or unsupported assertion on its own facts.

**3. Narrow Verified Supplemental Responses Are Warranted on This Record.**

Defendants correctly state that Rule 34 does not require a party to create records that do not exist. *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004). Plaintiff does not ask them to, and Plaintiff does not seek discovery into counsel's review process. Defendants invoke *LKQ Corp. v. Kia Motors America, Inc.*, 345 F.R.D. 152 (N.D. Ill. 2023), for the rule that inquiry into an opponent's search should be the exception rather than the norm and must rest on specific and tangible evidence of a material

failure of reasonable inquiry. ECF 81 at 3. That standard is satisfied here, and what Plaintiff seeks is the narrowest tool adequate to the showing. Repeatedly the answer is that "after a reasonable search, no responsive purchase orders, invoices, supplier agreements, or shipping records were located," ECF 81 at 7, without identifying the custodians whose materials were reviewed or the accounts and repositories searched.

The specific and tangible evidence *LKQ* requires is present in four particulars. First, the only search Defendants have actually described does not match the representation it supports: Mr. Zhang searched the TikTok Shop seller interface for removed listings and historical versions of them, Zhang Decl. ¶ 7, and on that basis states that the Storefront Defendants hold no other marketing or advertising materials of any kind, *id.* ¶ 8. Second, two of the three custodians have testified that the devices on which the business was conducted were destroyed. Third, the August 10 examination surfaced an entity absent from every prior response: Ms. Zheng Xi testified that a Hong Kong company she owns, Rui Jie Wu Limited, was "registered . . . to make things more standardized," is presently active, and is the entity paying counsel in this action, Tr. 102:13–103:23, and she described two additional storefronts operating on another platform, Tr. 119:12–120:3. Neither appears in the responses Defendants describe as complete. Fourth, Defendants' witnesses could identify neither the United States warehouse through which the accused products were fulfilled nor the third party to whom more than a million dollars in platform settlements was paid. That is a specific and tangible showing, not a generalized doubt.

Plaintiff requests an order directing Defendants to serve, within fourteen days, verified supplemental responses to the requests Plaintiff identified as uncured on July 6, 2026, stating for each the custodians whose materials were searched, the nonprivileged accounts and

repositories searched, the date range covered, and whether responsive material once existed and is no longer available. Plaintiff does not seek search terms, counsel's instructions, or any privileged or work-product material. That is the narrowest tool adequate to the showing, *LKQ*, 345 F.R.D. 152, it imposes no burden on a party that has in fact searched, and it resolves the dispute rather than deferring it to trial.

**4. Expenses Are Warranted Under Rule 37(a)(5) (ECF 81, Part V).**

Rule 37(a)(5)(A) directs an award where the requested discovery "is provided after the motion was filed," unless the movant failed to confer, the opposing position was substantially justified, or other circumstances make an award unjust. The parties conferred by video on May 26, 2026 and again on July 9, 2026, as recorded in the Local Rule 37.2 certification at ECF 72, and in writing through Plaintiff's deficiency letter of May 25, 2026 and its July 6, 2026 service. Defendants' suggestion that Plaintiff "moved at a category level without first identifying which specific request remained deficient after the June 26 verified supplements," ECF 81 at 10, is answered by the document itself. Part II of Plaintiff's July 6, 2026 service — filed with the motion as Exhibits B and C — lists each deficiency by originating request number, recites the date it was served and the date it was first raised, states what the June 26 supplements did and did not cure, and marks each item cured or uncured. ECF 72, Exs. B & C, Part II. That is request-level identification, served fourteen days before Plaintiff moved.

As to substantial justification, Plaintiff accepts that some disputes Defendants identify (the scope of a particular request as written, the reach of Rule 34 control over a processor's records) may meet that standard. *Pable v. Chicago Transit Authority*, 145 F.4th 712, 724 (7th Cir. 2025); *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). But most do not. The native Seller Center exports, the post-injunction platform records, the further takedown files, and

the advertising cost detail were within Defendants' possession throughout and were produced only after the motion. Some on the last day after the depositions and some after fact discovery closed. Nothing in the Opposition explains why records generated and maintained by the platform on Defendants' own accounts could not have been exported months earlier, in time to be used. Nor does it explain why the request-to-Bates mapping, sought on May 25 and again on July 6, was first offered in the Opposition itself.

Plaintiff does not seek a windfall. If the Court grants the motion in part, Rule 37(a)(5)(C) permits apportionment, and Plaintiff submits that an award limited to the fees reasonably attributable to the categories produced after July 20 would be just. *Cf. Board of Education of Evanston Township High School District No. 202 v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 37 (N.D. Ill. 1984).

**E. Conclusion**

For the foregoing reasons and those stated in ECF No. 72, Plaintiff respectfully requests that the Court order (1) the verified supplemental responses described in Part 3; (2) production of the existing transaction-level financial records, the platform settlement or payout reports and the Forms 1099-K, if any, for the accused storefront accounts, and the records within Defendants' possession, custody, or control sufficient to identify the payment path upstream of the storefronts; (3) an order memorializing that no responsive material is presently withheld on privilege, immunity, or foreign-law grounds and requiring prompt compliance with Rule 26(b)(5)(A) as to any later withholding; (4) leave to use the advertising exports served August 25, 2026 without waiver of Plaintiff's objection to their untimeliness; and (6) Plaintiff's reasonable expenses under Rule 37(a)(5), apportioned as the Court deems just.

RESPECTFULLY SUBMITTED,

By:

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, simultaneous with the filing of this Submission, a copy of this submission was served on the Docket using the CM/ECF system and a courtesy copy to the e-mail of all Appearing Parties.

RESPECTFULLY SUBMITTED,

By: /s/ Baruch S. Gottesman
Baruch S. Gottesman, Esq.